case number case numbers 23-5612 and 23-5645 Modern Holdings LLC et al versus Corning Inc et al oral argument not to exceed 15 minutes per side Richard Getty for the appellant you may proceed thank you um good morning uh may it please the court uh Mr. Johnson um I've reserved three minutes for rebuttal very well thank you uh this case should be reversed on several grounds and I'll address each one of them but the first one I'd like to address is the statute of limitations um there basically was no evidence put forward by the appellee by Phillips to support a statute of limitations defense um the instruction was do you believe by a preponderance of the evidence that plaintiff knew or reasonably should have known that the property may have been contaminated with lead dust particles emanating from the facility prior to November 27 2008 the lawsuit was filed in 2013 so that November 27 2008 date was simply to go back five years the evidence presented at trial was that Phillips opened its property up to the public created a false sense of security regarding the cleanliness and safety of its operation it invited children to come play soccer and baseball on fields on site and um there's no evidence to support the November 27 2008 date can I stop you and ask just a clarifying question um do you do you concede um that you have to run the table so to speak on both these issues um by which I mean um we don't even need to reach the expert testimony issue um unless we agree with you on the statute limitations issue yes okay I think I think there's there's error um throughout not only on the statute of limitations uh there's a there's a serious issue about the verdict form that was used um we never saw a statute of limitations instruction until the night before closing arguments we got the the revised version of the instructions at 11 32 august 22nd that's 11 32 a.m. in the evening um and we also I must admit I'm a bit confused by the instructions it seems like I don't understand why the instructions provide uh to go on to the next verdict form if you answer no to question one or it seems like would go to question two regardless of how you answered question one do you agree or or or am I missing something here uh I think that would be correct your honor and was that what that was just a type of objection raised to this uh question um when you got it with your your account uh you or your colleagues make an objection to this question whenever we we really we were very hurried that morning as the record would show and we had very little time to address the verdict form or the or the or the instructions um I'd wish we had had more time but um the the the real problem here was that the statute limitations is a complete defense so you should not move on to the merits if they ruled uh in our favor or in in in the favor of the uh phillips but they nonetheless answered it um affirmatively that the statute was barred that they went ahead and and also address the other uh the other would both sides concede that that was just a typo and it should have been the opposite way well I don't know if it was a typo but it flips you know the way the instructions were were phrased it flipped the um the burden uh well no um not the I thought those were two distinct points you were making one is that it didn't um the the question itself doesn't mention that phillips had the burden and the second one was um it suggested you should continue to go to the merits even if you find for limitations yes and I thought we were just talking about the second one and on the second one I suppose it makes it makes sense to me to say that the jury can just end if it finds that the statute limitations has run and the claim is untimely and there's no need to go to the merits but as written it just doesn't make any sense because it suggests that even if you find the claim is timely then you don't reach the merits which if then then the jury would not know what to do right well I think one of the problems um I have a a lot of respect for Judge Van Tatenhove he is a highly intelligent judge I've been before him um numerous times uh we tried a large case in front of him it was his first big trial in London about 10-12 years ago right after he was on the bench he pushes very very hard he is intent on meeting his schedule we had a criminal trial beginning involving a state trooper who had taken some guns that were state property and taken them for his own use starting that next Wednesday and he pushes hard to meet his schedule um the other problem that we had well what can I but what can I I mean can I ask you though I'm just to cut to the chase I mean there's two possible errors here the one about moving on to the next one I don't see any prejudice from that I mean if you can explain how your prejudice so the jury found against you on the statute limitations they found against you on the merits what would have changed if that question had been worded differently and number two on the preponderance of the evidence the instruction itself says that um the defendant bears the burden on that and the and the verdict form says preponderance of the evidence doesn't identify who has the burden so why I don't understand why that's a problem the the actual instruction was correct so can you just address that both of those well the problem on the statute limitations is that there was no evidence to support it I mean if you look at their brain I'm asking about the I'm asking about the verdict form though you said there was a problem with preponderance of the evidence so would we agree that there's no problem with that that the defendant has the burden and that they were there was a proper instruction on that right the verdict form should match the instructions and it did okay but you know sometimes it doesn't it's not perfect but I mean is it is it is there prejudice here and I'm well I think it should it should match the instructions I've never seen where it other than this case where it didn't what is the evidence that the jury was confused because the jury instruction itself would have told them that Phillips has the burden of proof it seems like it's ranked speculation to suggest that they would have disregarded the jury instructions when we have background legal principles that the jury follows the instructions well there was no evidence to support a statute of limitations instruction here nothing but speculation and I was about to refer to their brief if you read their brief from 52 on the original brief all it is is speculation or innuendo none of these property owners uh knew of contamination until their properties were sampled and tested after 2013 one of the women uh miss mitchell didn't even buy our property till 2017 so um their the sole uh evidence in the record was that two of these when they were children minors you know seven or eight years old their mothers wouldn't let them eat snow cream because the soot that had accumulated on the top of the snow I mean this court has said you don't make decisions based on anecdotal evidence or speculation but what um do you think you're so as I understand the discovery rule it's not that you I don't correct me if I'm wrong on Kentucky law it's it's not that you need to know um or should have known that lead was um uh invading your property you just need to have been put on inquiry notice that a reasonable person would have investigated whether hazards were being put on your property that's correct if that is the standard why isn't why isn't the fact that as as you said one of the um one of the plaintiffs suggested that their mother opines that so it was hazardous I would think that that would that would satisfy an inquiry notice standard what has to be reasonable I mean they were children and the the facility wasn't operated by Phillips at that time this the facility was operated by Corning back then so there's no evidence uh of any any uh any testimony that they they knew during the time uh from uh 82 to 2013 when Phillips operated this uh facility of anything that would support a reasonable inquiry I mean the ball versus union carbide which is a decision of this court said that you have to have reasonability it can't be speculation it can't be innuendo and all they've got in the record here is nothing but speculation and innuendo so um the other thing that I think is extremely important is both their appraiser and our appraiser both agreed that the date uh at the late at the latest was 2015 when people would be on inquiry notice the lawsuit was filed in 2013 and they agreed 2015 in fact their expert C.W. Wilson who's from Harrodsburg Kentucky um he testified that he thought that a number of people in the Danville area bought property had no idea about about this didn't even know about any possible contamination uh after 2015 so the evidence in the record totally uh contradicts a a decision based on the statute of limitations on any evidence to support it there is no let's move on to the experts uh what's your best arguments in terms of error of uh admission or exclusion of expert testimony well it's abuse of discretion that's the standard um what's what are your best arguments well let's take them one by one Dr. Sayhu please order them you don't have much time left pardon me give the strongest ones first please okay I think the strongest one is uh Mr. Iwanski he's a meteorologist he testified uh about um the contamination and he he's not qualified Federick uh never did a risk assessment on the properties Shields had a footnote in his rebuttal report uh report which was based upon hearsay and uh the court wouldn't allow Dr. Westerman to offer any rebuttal testimony and the last thing is uh the jury I've never had a jury where I had five people falling asleep constantly that happened okay uh you'll have your rebuttal time thank you Mr. Johnson thank you Judge Brian Johnson for Phillips Electronics North American Corporation um may it please the court Mr. Getty I think what I'll start with I suppose is addressing some of the argument that's been made with respect to the statute of limitations unless your honors have other issues you'd like for me to address um but I'll try to work my way through those if that's okay with the court I think with respect to the statute of limitations um first of all Judge Murphy was this just a typo in the verdict form yes it was the yes and the no should have been flipped um Judge Nalbandian as you pointed out there's no prejudice here in any event I think we see from these verdict forms is that the jury determined that the claims are time barred and I'll get to why they did in a moment but notwithstanding what the verdict form said they went on to make findings with respect to Phillips liability and determined that Phillips had no liability so as a practical matter what we see from these verdict forms is that the jury did not believe the plaintiff's case on the merits the reason that they got to the answer on the statute of limitations and why it applies is based on the plaintiff's own testimony at trial the plaintiffs presented one plaintiff after another talking about how there was smoke billowing forth from Phillips operations suggesting to the jury that that smoke can I ask you a about this because I'm struggling with this one when so this is kind of a reasonable diligence situation I assume and um what what did I what what did they have to do what was the do you have to do soil samples is that what it is like if I have a if there's a plant in my neighborhood and I see smoke coming out of it which you know when I was a kid growing up you we had a plant in town and am I on notice that if I buy a property I better or even if I don't buy a property I'm on my own property I need to have soil samples taken when I do the you know inspection or whatever what do I have to do because it seems odd that means lead in the in the ground for example would be hidden it seems to me latent and I wouldn't I wouldn't be able to find that unless I did some scientific testing is that is that reasonable for everybody in Danville I don't think so but I also don't think that that's required to start the statute of limitations from running for exactly the reason Judge Murphy was pointing out earlier if there's something that puts a property owner or a potential property owner on inquiry notice there might be something harmful on the property that's what begins the clock with respect to the statute of limitations so when we have testimony from the plaintiffs themselves Melvin Harris for example that there was smoke coming from the facility and it it was landing on the snow and his parents were telling him you can't make snow cream from that that means that there was something about that that raised some suspicion that that may have been harmful and there was plenty of evidence of that both during their testimony at least of that I mean is that I mean okay the snow gets dirty I mean the snow gets dirty all the time no matter I mean from car exhaust is that I mean I let's assume it's from the plant do I am I supposed to assume that it's toxic or that it's dangerous I mean okay fine I can't eat the snow and for a number of reasons I probably wouldn't eat snow but what does it mean that it's got lead in it I mean that's what I'm trying to figure out I don't I don't know that I could figure that out without having somebody come in and take samples and I'm just trying to figure out whether that's reasonable and when it would have been like when should I have done that you know in 1990 in 1985 in 1995 when when was I on notice essentially that my might have lead on it so I think that I think based on the plaintiff's testimony people would have been on notice that there was a substance and I'll cover why I say that instead of lead but a substance on their property coming from the facility many years earlier far before this case was filed now the reason I make the distinction between substance and lead is that for purposes of determining whether there's negligence and certainly whether there's trespass really the is there something this facility is emitting that is crossing my property line and landing on my property so that's what would start the statute of limitations running in this instance whether it's lead or not they could do samples and determine but what they knew or believed or should have believed based on the plaintiff's testimony for sure is that there is something coming from that facility and landing on their properties that's the testimony that they try to get the jury frankly mad at Phillips for purposes of punitive damages so that's why we heard so much of this testimony during trial about dust on the snow smoke filling from the stacks all of that evidence was for that purpose so when the jury hears that as I told them in closing arguments when you hear that you have to take into consideration if that's true if you believe the testimony what does that mean in terms of when the plaintiffs would have expected that there was something on their property from the facility no it's in your body we go ahead oh I was just gonna ask um the relationship between the cause of action and the accrual so I was so remind me brief so is it there's standard of care obviously was a negligence type cause of action but that was there a trespass cause of action as well and isn't that traditionally an intentional tort that would run just from the accrual of the substance and it really doesn't matter what the substance is there actually can be two different types of trespass you can have a negligent trespass and you can have intentional trespass intentional obviously more frequently gives rise to punitive damages than a negligent trespass claim would and which one which one was presented to the jury here both both actually although the instructions just refer to a trespass both were pled by the plaintiffs both negligent and intentional but they were instruct the jury was instructed through well on verdict form question three has the has this plaintiff proven by a preponderance of the evidence that phillips trespassed on the property so we'll go back to the instructions to see how to answer that question wouldn't none of the none of the facts of the substance's harmfulness would matter for the intentional trespass i would think it would matter for damages and for potential injury because that shows that the trespass was more harmful but as i understand common law rules just generically maybe not in kentucky is just somebody walking on somebody's property as a trespass even if it doesn't cause any damages and you can get nominal damages but that would be correct your honor i was going to ask you about it seems like there was some testimony of at least some of the plaintiffs who worked at the plant and used protective gear i noticed uh judge van tatenhove did not rely on that in his opinion um as far as statute of limitations goes um are you are you relying on that evidence as well or that's something we don't that's not really relevant to the accrual of the of the limitations period it would be relevant with respect to those particular plaintiffs who testified that they worked at the plant or protective gear that sort of thing for the plaintiffs who did not work at the plant i don't think it would be relevant but i think that for purposes of evaluating what the general community community would have known pardon me you would look i think it's like blanton versus cooper industries which talks about how an objective standard is to be used so where you have plaintiffs saying i don't you know i don't know anything about the the plant's operations for example if there had been testimony to that effect you would still look at what the community would have known based on all the other testament about smoke blowing out smoke on the snow that sort of thing why don't you um go on to the to the points that mr getty made about the the expert testimony sure so i think with respect to mr awanski mr awanski is highly qualified he is an air emissions expert he works for trinity consultants he's been doing it for many many years i think the plaintiff's primary criticism of mr awanski is that he's not an expert specifically with respect to how electrostatic precipitators work he didn't need to be for purposes of offering his opinions in this case instead what he's trying to establish is first of all that dr sahu was wrong and had no basis for his opinions in the first place including those that were admitted by the trial court but second that reviewing information with respect to this particular industry the glass making industry it is demonstrated that phillips operations met the standard of care so i think that based on his qualifications he was certainly qualified to offer those opinions that's what he does for a living is evaluating our emissions and inventories so he's very familiar with it and had a proper basis for his opinions especially given all the work he did with respect to benchmarking which we didn't see from the plaintiff's side with respect to dr can i ask you about the benchmarking idea um i was troubled by the notion imagine imagine that an entire industry um is acting negligently if we define negligently using you know the classic learned hand formula that the cost of the precaution is is less than the harm times the risk of the harm developing so say there's some type of preventative measure that would be near costless um and just in the industry is using it um is it your view that under kentucky law that also would not violate the standard of care because because nobody in the industry is using it um and and that is the marker for what is ordinary care even under my hypo where it would just be costless to have for them to have adopted it i think that if i could add one wrinkle to your question if i could i think what we what we would also need to look at is whether or not withstanding the lack of use of this hypothetical device the industry on hold nonetheless well within the regulatory requirements so i do think that at that point and i understand that the regulations don't necessarily establish a standard of care and in the event there's other information to be considered but it's highly relevant of course to determining what the standard of care is dr sahu disregarded that almost wholesale but i think hopefully i'm answering your question to get back to your hypothetical i think it would be dependent on whether there is for example a violation of emissions limits and an air permit or whether the entire industry is doing that violating air permits as a result of not having this type of device that would otherwise be helpful i hope i guess so i i guess my answer or my question was more is is what others in the industry what they are doing is that just some evidence on whether they were negligent or is that the actual test on the standard of care meaning as a matter of law if you're doing what others in the industry is doing that's that's by definition ordinary care i think that again again with the proviso that the industry is meeting its regulatory requirements across the board and i think that it would be meeting the standard of care so even if there is something missing that might otherwise be useful that sort of gets back to as i understand your hypothetical i think that sort of gets back to dr sahu's opinion that the standard of care should be adopting best practices but judge van tatenhove properly excluded excluded excuse me but i think that if you have an industry that is within the regulatory limits and you don't have outliers within that industry then i think you can look at industry behavior to help establish the standard of care if you look at dr sahu what he's saying is that if you look at the statute or the standard of care that i believe applies here nobody in the industry is meeting it but he didn't do anything to show that the industry was out of compliance with regulatory limits or anything else to support that that was one of the problems with his opinions and why they shouldn't have been admitted but is there is it just a matter of semantics and wording i mean an expert what can he opine that the this would have been ordinary care or should have been ordinary care instead of using the word best practices or whatever it was could he have recast it in a way that's basically just opining on what you should be doing and wouldn't wouldn't that just be admissible like why yes okay fine it's the cadillac plan or whatever but is that i mean just mislabeled it as best practice i mean can't you i don't know if you i guess i'm not i'm not sure at what level in some of these tort cases that you can't simply say this is what i might in my opinion the standard of care is and leave it at that no good question good question judge i think the problem with with having that type of opinion admitted without more information on that hypothetical is that if an expert who has experience in the environmental field can simply show up at trial and say it's my opinion that the standard of care should be x whatever it may be there has to be something to him up beyond simply a subjective personal opinion which dr saho had admitted he was offering here didn't the district judge allow him to at least say it was good in standard practice isn't that exact i mean essentially he did get the opinion out he just said it was good in standard as opposed to best he did and so judge judge the problem we had with that is that when you look at the reason judge van tatenhove excluded his best practices language it was because he didn't do any industry specific analysis at all in fact he vehemently disagreed that he should have to do that in the first place so the opinion was partially excluded based on his failure to do any industry specific benchmarking or other type of analysis whatsoever looking at industry publications what have you but judge van tatenhove allowed him to offer that second opinion that you just mentioned that the practices were not consistent with good and standard practices of the industry notwithstanding that dr saho didn't look at the industry in the first place so okay we believe it should have been excluded for the same reason it is sort of a matter of semantics but if an opinion is being excluded based on lack of methodology pertinent to the industry it should cover everything okay thank you mr johnson and mr getty do you have rebuttal yes i do and i'll try to be rather quick and rather pointed first of all benchmarking is not the only consideration in establishing standard of care phillips was consistently not complying with regulatory requirements the record shows many violations of the regulatory requirements and exceeding acceptable levels of the emissions as to mr iwanski i don't think he was doctor i think it's mr iwanski brian can correct me if i'm wrong but i believe it's mr iwanski he has no experience with respect to an electrostatic precipitator and you know the electrostatic precipitator or ep is a key piece of equipment in this case that was installed initially by forning and it was sort of you know when they bought the facility they got the ep they didn't they didn't replace it for 32 years and they never the maintenance record was terrible it was a mcgill model and there was testimony from the mcgill people that they didn't regularly maintain it for for example you have an electrostatic precipitator what it does is it it stopped it it it cleans what's supposedly going out lead which is dangerous toxic when they had the stoppages of the ep they had no separate source or backup source like a generator to continue it to run until it would be repaired that is a violation of the standard of care um you know back to the smoke smoke i don't i'm not aware of any case that was smoke uh it puts you on notice of of lead in your ground i think judge nalbandian put his finger on it when he said you know don't you have to test it i mean i grew up in western pennsylvania in a in a steel town and when i was a kid there was black soot on the snow i had to you know clean it off to make a snowball that didn't tell me or anybody else that it was can i ask about that because i um why isn't why isn't that enough for liability i mean it helps you in terms of the burdens of proof on the merits but it may harm you on the statute of limitations i mean if if they are really um invading um your client's property with soot i would think if it's traditional um strict liability for a trespass that would be enough and it doesn't matter what the soot no so it is not the problem lead is the problem i agree with you on that as judge nalbandian i didn't mean to interrupt you your honor as judge nalbandian said you got to test you got to find out if it's toxic so it's not toxic and you know you still have sued them even if it wasn't toxic couldn't you still have sued them maybe your damages would have been less no under kentucky law so that we had to have a toxic substance that invaded their property and diminished the value of of their property and is that is that so that's the nature and is that undisputed and that's the nature of the causes of action under which you were suing yes i think it is and and i would add that soot came from corning it never came from phillips never there's no testimony of any soot from phillips so i'm you know i'll answer any other questions you have um that i think we've addressed the problems that are the most significant there are a number of problems in this case okay well thank you mr getty and mr johnson we'll take the matter under submission uh the clerk may adjourn the court